In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00044-CV


______________________________





IN RE: JO ALICE MCCUE









 


Original Mandamus Proceeding









 
 



Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter








MEMORANDUM OPINION



 Jo Alice McCue was sued in Justice Court in Hopkins County on a civil complaint. She asks
this Court to issue a writ of mandamus that directs the Eighth Judicial District Court of Hopkins
County, the Honorable Robert Newsome, presiding, to order the Justice of the Peace for Precinct
One of Hopkins County, the Honorable Yvonne King, presiding, to permit McCue to have
proceedings in that justice court transcribed by a certified court reporter. Without hearing oral
argument--and without inviting a response from the real party in interest--we deny McCue's
application.

 In her application, McCue states, "Relator readily concedes that there is no express statute
requiring a Justice of the Peace to allow for a court reporter." McCue, however, advances a policy
argument that parties should be allowed to have justice court proceedings transcribed; according to
her, such a policy would "favor[] transparent and honorable judicial proceedings" and "encourage[]
participants to conduct themselves according to established legal procedures." She argues that
forbidding the presence of a court reporter "promotes and sanctions secret courts and the
determination sub rosa of substantial rights." 

 Mandamus issues only when the mandamus record establishes (1) a clear abuse of discretion
or the violation of a duty imposed by law and (2) the absence of a clear and adequate remedy at law. 
Cantu v. Longoria, 878 S.W.2d 131 (Tex. 1994). Mandamus is an extraordinary remedy that will
issue only to correct a clear abuse of discretion, or, in the absence of another statutory remedy, when
the trial court fails to observe a mandatory statutory provision conferring a right or forbidding a
particular action. Abor v. Black, 695 S.W.2d 564, 567 (Tex. 1985). Although the right to
mandamus is quite limited, the denial of a jury trial, when such a right is clearly shown, can be
addressed by both appeal and mandamus. In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 139
(Tex. 2004) (orig. proceeding). Additionally,

 [a] trial court abuses its discretion in its determination of factual issues only if the
record clearly establishes the trial court "could reasonably have reached only one
decision," and it failed to do so. "In contrast, a trial court has no discretion in
determining what the law is or applying the law to the facts. Therefore, a failure by
the trial court to analyze or apply the law correctly, as when a discovery order
conflicts with the Texas Rules of Civil Procedure, constitutes an abuse of discretion."


In re White, 227 S.W.3d 234, 236 (Tex. App.--San Antonio 2007, orig. proceeding).

 Relator concedes no statute requires that a court reporter be allowed to transcribe proceedings
in a justice court. Moreover, relator acknowledges that justice courts are not courts of record. State
v. Alley, 137 S.W.3d 866, 869-70 (Tex. App.--Houston [1st Dist.] 2004, pet. granted) (citing Gano
v. State, 466 S.W.2d 730, 733 (Tex. Crim. App. 1971)), aff'd, 158 S.W.3d 485 (Tex. Crim. App.
2005). 

 McCue argues that it is in her interest to secure an accurate transcription of sworn testimony
to preserve it for future use. Texas procedure provides civil litigants with an elaborate pretrial
discovery scheme for obtaining and preserving witness testimony such as the taking of depositions. 
See Tex. R. Civ. P. 199.1 Further, we note that, if the justice court's ultimate ruling is thought to be
erroneous, McCue is entitled to a de novo trial on appeal. See Tex. R. Civ. P. 574b.

 We find no statutory rule or constitutional principle that affords McCue the right to a
transcription of proceedings in justice court. Given that justice courts are not courts of record and
that the Legislature has not required justice courts to permit the transcription of proceedings therein
when requested by a party (even if transcribed at the party's own expense), we cannot conclude the
district court abused its discretion by denying McCue's petition for writ of mandamus against the
justice court. McCue's petition for mandamus from this Court against the district court is, therefore,
denied.



 Jack Carter

 Justice


Date Submitted: May 6, 2009

Date Decided: May 7, 2009



nUsed="false" Name="Medium List 1 Accent 1"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00051-CR

                                                ______________________________

 

 

                                   FELIPE RUBIO GASPAR,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 336th
Judicial District Court

                                                             Fannin County, Texas

                                                            Trial
Court No. 22481

 

                                                         
                                         

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                      MEMORANDUM OPINION

 

Felipe Rubio Gaspar was accused of entering
the home of Noemi Jiminez,[1]
his ex-girlfriend,[2] without the
owners permission, and assaulting her current boyfriend, Pedro Noria Guzman,
with a screwdriver.  Gaspar was indicted
on a charge of burglary of a habitation with intent to commit a felony, and he
pled not guilty.  After a jury trial,
Gaspar was found guilty and sentenced to fifty years confinement[3]
and assessed a $10,000.00 fine.[4]    

On appeal, Gaspar argues that there is
legally and factually insufficient evidence to support the conviction and that
the trial court erred in failing to allow a jury instruction on the lesser-
included offense of criminal trespass.[5]

We affirm the conviction because:  (1) there is legally sufficient evidence to
support the verdict; and (2) there is no evidence that Gaspar is guilty only of
criminal trespass.

            Under
the authority of the very recent Brooks
v. State opinion where a plurality of the Texas Court of Criminal Appeals
abolished the separate factual sufficiency review, No. PD-0210-09, 2010 WL
3894613, at **1, 14 (Tex. Crim. App. Oct. 6, 2010), we do not address Gaspars
challenge to the factual sufficiency of the evidence.[6]

            The Jiminez
property is located in Trenton, Fannin County, Texas, and consists of seven
acres that are surrounded by a fence.[7]  Entry onto the property requires travel
through a gateway that has a steel gate. 
The property has two trailer houses, one small one and a larger
one.  Noemi owned the smaller trailer and
her father owned the land itself and the larger trailer home.    

            Gaspar and
Noemi Jiminez had an on-again, off-again relationship for several years.  At times, Gaspar and Noemi would live
together in Trenton, in the smaller trailer. 
Noemi would occasionally stay at her fathers trailer, but Gaspar never
lived in the larger trailer.  When their
relationship finally ended,[8]
Gaspar moved out of the smaller trailer a few weeks prior to the incident.  

            After
the relationship ended, Gaspar moved in with Jesus Perez, who lived within a
mile of Noemi, who had begun a new romantic relationship with Guzman.  Guzman, Noemis father, Israel Jiminez, and
Noemis eleven-year-old son, Nelson Rodriguez, all testified that on the day of
the alleged assault, Gaspar came to the Jiminez property, and confronted
Guzman, warning him to leave Noemi alone and that Guzman would regret messing
with her.[9]  

            After they
both got off work, Perez and Gaspar traveled to a restaurant in nearby
McKinney, Texas, and had a few drinks. 
Upon returning to Perezs home, Gaspar got on the phone and started
arguing with Noemi.  Perez believed
Gaspar was arguing about his kids, and . . . somebody being there with her.  Gaspar indicated he was leaving because he
had to go do something over there. 
Gaspar invited Perez to go with him, but Perez declined, saying, I dont
want no problems.  Perez testified that
Gaspar was drunk and angry that the other guy was down there. 

            At
the time of the incident, Noemi was living in the larger trailer, and on that
particular night, she, her four children, and Guzman were sleeping in one of
the bedrooms, while her father and a few other family members were in the homes
other bedrooms.  Shortly after midnight
that night, Gaspar entered the large trailer home and assaulted Guzman, who was
sleeping next to Noemi.  Noemi and other
family members tried to pull Gaspar off Guzman, but he got up and kept just
going back after [Guzman].  When the two
men struggled to the front door area, outside, and back into the living room,
where the lights were turned on, Noemi noticed that Guzman was drenched in
blood and that Gaspar was holding a screwdriver. 

            After the
men were finally separated, Gaspar left the premises.  Immediately after Gaspar left, Israel saw a
car parked in front of the locked gate. 
The driver started the car and drove away. 

            Apparently,
after Gaspar left the Jiminez premises, he returned to Perezs home.  Gaspar told him that he had wrecked the car
and asked Perez to help him hide it. 
Perez noticed that both the car and Gaspar were covered in blood, that
one of the cars tires was completely torn up,and that the fender was way
beyond repair, couldnt be fixed. 

            After a
9-1-1 call, Officer Ron Alexander arrived at the Jiminez residence and saw
blood droplets on the wheelchair ramp outside the home, quite a bit of blood
right there in the front of the door, blood smeared all over the front door,
all over the screen door, a pretty good amount of blood.  He testified that Guzman was lying on the
floor, bleeding profusely, and that he appeared to have been stabbed several
times.  Guzman had thirteen puncture
wounds to his body, head, and face.  

            Shortly
thereafter, the police arrived at Perezs residence.  Alexander noticed a little splatter of blood
on the glass of Perezs front door.  Inside
Perezs home, Alexander found Gaspar asleep, saw a screwdriver that matched
Noemis description on the floor beneath Gaspars outstretched hand, and found
a shirt and boots with blood on them. 
Gaspar was arrested and charged with burglary of a habitation with
intent to commit another felonyaggravated assault with a deadly weapon.  

            At
trial, Gaspar requested a jury instruction on the lesser-included offense of
criminal trespass, but the trial court denied his request.  

There Is Legally Sufficient Evidence to Support
the Verdict

 

            Gaspar was charged with
burglary of a habitation with intent to commit a felony.  The indictment, which tracks the applicable
statutory language, alleges that Gaspar

did then and there intentionally or knowingly
enter a habitation, without the effective consent of Noemi Isabel Jiminez, the
owner thereof, and attempted to commit or committed the felony offense of
Aggravated Assault with a Deadly Weapon. 

 

            And
it is further presented that the defendant used or exhibited a deadly weapon,
to-wit:  a screwdriver, during the
commission of or immediate flight from said offense.

 

See Tex. Penal
Code Ann. § 30.02(a) (Vernon 2003).  On appeal, Gaspar argues that the evidence
supporting his conviction is legally insufficient because the State failed to
establish that Gaspar entered the Jiminez home without the effective consent of
the owner.  We disagree.

            In reviewing the evidence for
sufficiency, we consider the evidence in the light most favorable to the
verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S.
307, 31819 (1979).  Based on the Brooks
pluralitys description of the new application of legal sufficiency review
under Jackson as rigorous and its statement that the use by reviewing
courts of the factual sufficiency standard in tandem with the legal sufficiency
standard may have skewed the proper application of the Jackson
standard, it appears that the high court is attempting to refocus the
application of the legal sufficiency standard from the quantity to the quality
of the evidence presented.  See Brooks,
2010 WL 3894613, at **1617 (Cochran, J., concurring).

            The
uncontroverted evidence establishes that Gaspar left Perezs house, where he
had been staying, and shortly after midnight, entered onto the Jiminez
property, entered the large trailer where Noemi, Guzman, Israel, and their
family were staying, and assaulted Guzman.             

            While Gaspar
used to live with Noemi in the smaller trailer, the evidence is undisputed that
he moved out a few weeks prior to the events in question.  Gaspar still had some belongings on the
property, and prior to this incident, he would occasionally come by the
property for dinner or to have his clothes laundered.  Inocente Gaspar, Gaspars brother, testified
that when Noemi and Gaspar lived together, they both had access to both
trailers.  However, Noemi and Israel
testified that Gaspar had never lived in the large trailer, did not have keys
to that trailer, and did not have permission to be anywhere on the property or
in the large trailer that night.  

            Sergeant
George Robinson and Investigator Brett Martin testified that the door jamb to
the home was busted and that the door appeared to have been forced open.  However, on cross- examination, Martin
admitted that he did not know if the door had been damaged during the struggle,
or whether the door had been broken down from the inside or the outside.    

            At
the time of the incident, the gate was locked, as Israel locked the gate every
night at about 7:00 p.m. and prohibited anyone, be they guests or family, from
entering the property after that time;[10]
after that time, Israel would not even answer his door.  Noemi noted that the rule was so strict that
at times, Israel had locked her out of the property because she had arrived too
late in the evening. 

            Here, there
is conflicting testimony regarding whether Gaspar damaged the lock and door in
order to gain entry or whether they were damaged during the struggle.  There is also conflicting evidence regarding
the extent, if any, of Gaspars access to the Jiminez property, as well as the
status of the relationship between he and Noemi at the time of the
incident.  The jury is the exclusive
judge of the credibility of witnesses and of the weight to be given their
testimony, and reconciliation of conflicts in the evidence is within the
exclusive province of the jury.  Wyatt v. State, 23 S.W.3d 18, 30 (Tex.
Crim. App. 2000); Barnes v. State,
876 S.W.2d 316, 321 (Tex. Crim. App. 1994).  The jury may choose to believe some testimony
and disbelieve other testimony.  Wyatt, 23 S.W.3d at 30.  Here, taking all the evidence into
consideration, there is ample evidence to support the jurys finding that
Gaspar entered the Jiminez residence without the effective consent of the owner
and assaulted or attempted to assault Guzman with a screwdriver.  Therefore, the evidence is legally sufficient
to support the verdict, and we overrule this point of error.

 

There Is No Evidence
that Gaspar Is Guilty of Only Criminal Trespass.       

 

            In his final
point on appeal, Gaspar contends that the trial court erred by not including a
criminal trespass instruction in the jury charge because it was a lesser-included
offense of burglary.  A defendant is
entitled to a charge on a lesser-included offense if:  (1) the offense is a lesser-included offense
of the alleged offense, and (2) some evidence is adduced at trial to support
such an instruction.  Hall v. State, 225 S.W.3d 524, 535 (Tex.
Crim. App. 2007); De Vaughn v. State,
239 S.W.3d 351, 355 (Tex. App.San Antonio 2007, pet. refd).  

            Applying the
first step of the analysis, here, Gaspar was charged with burglary of a
habitation with intent to commit a felony, to-wit:  aggravated assault with a deadly weapon.  The elements of burglary of a habitation, as
charged here, are:  (1) Gaspar, (2)
without the effective consent of the owner, (3) intentionally and knowingly,
(4) entered a habitation, and (5) committed or attempted to commit aggravated
assault with a deadly weapon.[11]
 See
Tex. Penal Code Ann. § 30.02(a)(3)
(Vernon 2003).  The elements of criminal
trespass are that: (1) Gaspar, (2) knowingly, intentionally, or recklessly,
(3) entered or remained in a habitation, (4) without the effective consent of
the owner, (5) having notice that entry was forbidden.[12]  See Tex. Penal Code Ann. § 30.05(a) (Vernon
2003).  The Texas Court of Criminal
Appeals has already held that the offense of criminal trespass is a
lesser-included offense of burglary.  See Day v. State, 532 S.W.2d 302, 306 (Tex.
Crim. App. 1975).  

            We
next consider whether there was evidence adduced at trial that supported giving
the instruction to the jury.  See Hall, 225 S.W.3d at 536.  A defendant is entitled to an instruction on a
lesser-included offense if the proof for the charged offense includes the proof
necessary to establish the lesser-included offense and there is some evidence
in the record that would permit a jury rationally to find that if the defendant
is guilty, he is guilty only of the lesser-included offense.[13]
 Id.;
Williams v. State, 796 S.W.2d 793,
799 (Tex. App.San Antonio 1990, no pet.).  

            In
this case, the evidence established that Gaspar entered the Jiminez residence
without the owners consent and assaulted Guzman with a screwdriver.  In contrast, there was no evidence supporting
an alternative fact scenario wherein Gaspar entered the Jiminez residence, but
did not commit or attempt to commit aggravated assault with a deadly weapon.  See,
e.g., Hampton v. State, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003) (holding
there must be some evidence directly pertaining to lesser-included offense for
jury to consider before an instruction warranted).  Gaspar points out that the screwdriver only
had his blood and DNA on it, rather than Guzmans.  The lack of Guzmans blood on the screwdriver
is evidence that that particular screwdriver may not have been the same
screwdriver used in the assault.  It is
not evidence contradicting aggravated assault with a deadly weapon.  Accordingly, there is no evidence in the
record that would permit a jury to conclude that, if guilty, Gaspar was guilty
only of the lesser-included offense of criminal trespass. Therefore, Gaspar was
not entitled to an instruction on criminal trespass.  We overrule this point of error.

            We
affirm the judgment of the trial court.

 

 

 

 

                                                                                    Bailey
C. Moseley

                                                                                    Justice

 

Date Submitted:          October
6, 2010

Date Decided:             November
5, 2010

 

Do Not Publish 

 











[1]Through
the record and pleadings, Jiminez is also spelled, Jimenez.  In this opinion, we use the Jiminez
spelling. 

 





[2]There
is testimony that Gaspar and Noemi once lived together as husband and
wife.  

 





[3]The
sentence was to run concurrently with his sentence in cause number
06-10-00050-CR.

 





[4]Gaspar
was also assessed $686.00 in court costs.

 





[5]With
permission, Gaspar submitted one brief for the two appeals (cause numbers
06-10-00050-CR and 06-10-00051-CR) he has pending before this Court. 





[6]In
the Brooks plurality opinion, the Texas Court of Criminal Appeals found no
meaningful distinction between the Jackson v. Virginia legal-sufficiency
standard and the Clewis v. State
[922 S.W.2d 126 (Tex. Crim. App. 1996)], factual-sufficiency standard,
and these two standards have become indistinguishable.  Brooks v.
State, No. PD-0210-09, 2010 WL 3894613, at *8 (Tex. Crim. App. Oct. 6,
2010) (4-1-4 decision).  Further, a proper application of the Jackson
v. Virginia legal sufficiency standard is as exacting a standard as any
factual sufficiency standard.  See id. at *11.  In a
concurring opinion, Judge Cochran pointed out that the United States Supreme
Court has rejected a legal sufficiency test that requires a finding that no
evidence supports the verdict because it affords inadequate protection against
potential misapplication of the reasonable doubt standard in criminal
cases.  Id. at *16 (Cochran, J., concurring).  Rather
than meeting a mere no evidence test, legal sufficiency is judged not by the
quantity of evidence, but by the quality of the evidence and the level of
certainty it engenders in the fact-finders mind.  Id. at *17.  Under the authority of Brooks, we do not address the defendants challenge to the factual
sufficiency of the evidence.  

 





[7]The
property is owned by Noemis father, Israel Jiminez.

 





[8]At
the time of the incident, Gaspars brother, Inocente Gaspar, believed Gaspar
and Noemi had reconciled, but he admitted that he had last seen Gaspar about a
month prior to the incident.  (Through
the record, Inocente is also spelled Inocenti.  In this opinion, we use the Inocente
spelling.) 





[9]Whether
Perez was with Gaspar during the confrontation is disputed.  Israel testified that Perez was there, while
Perez denies any involvement. 





[10]Israel
testified that it was 5:00 or 6:00 p.m.; however, Noemi testified that no one
was allowed in after 7:00 p.m. 





[11]A
person commits the offense of assault if that person intentionally or knowingly
threatens another with imminent bodily injury.  Tex.
Penal Code Ann. § 22.01(a)(2) (Vernon Supp. 2010).  Assault becomes aggravated assault if the
person committing the assault uses or exhibits a deadly weapon during the
commission of the assault.  Tex. Penal Code Ann. § 22.02(a)(2)
(Vernon Supp. 2010).

 





[12]In
Salazar v. State, 284 S.W.3d 874, 878
(Tex. Crim. App. 2009), the Texas Court of Criminal Appeals held that a
habitation inherently provides notice that entry is forbidden.





[13]In
making this determination, we must consider all the evidence introduced at
trial, whether produced by the State or Gaspar. 
Penry v. State, 903 S.W.2d
715, 755 (Tex. Crim. App. 1995).  The
credibility of the evidence and whether it conflicts with other evidence or is
controverted may not be considered in determining whether an instruction on a
lesser-included offense should be given. 
Id.; Saunders v. State, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992).  Anything more than a scintilla of evidence,
even the defendants own testimony, is sufficient to entitle a defendant to a
lesser charge.  Bignall v. State, 887 S.W.2d 21 (Tex. Crim. App. 1994); Hunter v. State, 647 S.W.2d 657 (Tex.
Crim. App. 1983).  If evidence from any
source raises the factual possibility that the defendant is guilty of only the
lesser-included offense, a charge on that offense must be included in the courts
charge.  Penry, 903 S.W.2d at 755; Saunders, 840 S.W.2d at 391.