**Lenard DE VAUGHN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–06–00581–CR.

Court of Appeals of Texas, San Antonio.

Sept. 12, 2007.

Discretionary Review Refused Dec. 19, 2007.

Angela J. Moore, Chief Public Defender, San Antonio, for Appellant.

Kevin P. Yeary, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

A jury found defendant, Lenard De Vaughn, guilty of burglary of a habitation, and the trial court assessed punishment at forty years' confinement. In three issues on appeal, defendant asserts the trial court erred in (1) denying his motion to suppress a pre-trial identification, (2) denying his motion for continuance, and (3) not instructing the jury on two lesser-included offenses. We affirm.

## BACKGROUND

Around noon-time on March 5, 2004, the complainant, Gertraud Oliver, was at home alone when she heard her doorbell ring. When she looked out the window of her front door, she saw a man walking away from the door. Oliver, thinking the man was a salesman, walked back to her bedroom. About forty minutes later, she heard a crashing noise, which turned out to be the sound of a potted cactus being thrown through the window of her bedroom. Oliver saw the same man who had been at her front door, this time with his arm through the window. Because there were no window coverings, both Oliver and the man looked at each other. Oliver ran out of her house, screaming. She then saw the man running through the yard, looking back at her as he ran.

At about the same time, Mary Helen Salazar was in her minivan running an errand, when she saw a man run across the street in front of her. She also saw Oliver "in the middle of the street yelling and kind of jumping around agitated." As the man crossed the street, he looked at Salazar, and she said she got a good look at the man. Because he looked suspicious, Salazar followed the man to a Diamond Shamrock store, where she saw him throw a bag into the back of a car. Salazar pulled into the parking lot, next to the man's car. When she parked next to his car, the man again looked at her, then he drove away. Salazar memorized the license plate number, and then drove back to where she had seen Oliver standing in the street. By this time, Oliver was on the telephone speaking to the police dispatcher, and Salazar was able to provide the license plate number. About forty minutes later the police arrived, and Oliver described the man.

San Antonio Police Detective Shawn Commerford testified he developed a sus-

pect when the license plate number revealed defendant as the vehicle's registered owner. He then compiled a photo array, from which both Oliver and Salazar identified defendant as the man they saw. Oliver and Salazar also identified defendant at trial.

## PRETRIAL IDENTIFICATION

Defendant first asserts the trial court erred in denying his motion to suppress an impermissibly suggestive pretrial photographic identification. Defendant contends the procedure used in the photographic identification was impermissibly suggestive because Oliver, who was initially unable to identify him, was improperly presented with the same photos a second time in a manner that caused her to mistakenly identify him as the culprit.

■■■ "An in-court identification is inadmissible when it has been tainted by an impermissibly-suggestive pretrial photographic identification." *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex.Crim.App.1999). "The test is whether, considering the totality of the circumstances, 'the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Id.* (quoting *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). "[I]f the totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure, subsequent identification testimony will be deemed 'reliable,' 'reliability [being] the linchpin in determining the admissibility of identification testimony.'" *Webb v. State*, 760 S.W.2d 263, 269 (Tex.Crim.App.1988) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). Suggestiveness may be created by the manner in which the pretrial identification procedure is conducted, for example, by

police pointing out the suspect or suggesting that a suspect is included in the line-up or photo array. *Ibarra*, 11 S.W.3d at 196.

■ Defendant contends the manner of presenting the photo array to Oliver was impermissibly suggestive. We disagree. Oliver was shown the same photo array twice, once on March 16 and again on March 23. On March 16, Oliver eliminated five of the six photos, and as to the sixth photo, she thought the man in the photo, who was defendant, "looked the closest to the man she saw involved in the burglary of her home." Commerford testified he "would not call [Oliver's identification] an absolute positive I.D." Because Oliver's identification was not "a hundred percent," Commerford did not ask Oliver to initial the photo. Instead, he wanted Salazar to view the photo array. When Salazar saw the array, she immediately selected defendant's photo. Salazar told Commerford she was "very sure" about her identification. Commerford had Salazar initial and date the photo. On March 23, Commerford again asked Oliver to view the same photo array. Oliver again selected defendant's photo. After identifying defendant, Oliver signed and dated the back of defendant's photo. Although by this time Salazar had already initialed and dated defendant's photo, Commerford testified Oliver did not know Salazar had selected and initialed the same photo. Commerford testified he did not point out defendant's photo in the array or suggest that a suspect was in the photo array. We conclude the procedures used by Commerford to present the photo array to Oliver were not impermissibly suggestive; therefore, we do not consider whether the procedure gave rise to a very substantial likelihood of irreparable misidentification.

## MOTION FOR CONTINUANCE

■■■ Defendant next asserts the trial court erred in denying his motion for con-

tinuance. We review a trial court's ruling on a motion for continuance for an abuse of discretion. *Wright v. State*, 28 S.W.3d 526, 532 (Tex.Crim.App.2000). In order to establish an abuse of the trial court's discretion, an appellant must show that the denial of his motion for continuance resulted in actual prejudice. *Id.*

After the State rested, defendant announced he wished to call Officer Edward Rodriguez; however, Rodriguez was not present. When asked by the court if defense counsel had told Rodriguez to be present, counsel responded that he was entitled to rely on the State's subpoena. The State admitted they had released Rodriguez, who had been present at court earlier in the day, because the State did not know defendant wanted Rodriguez to testify. After the jury was excused for the afternoon, the court instructed defense counsel to have his witnesses ready by the next morning. The next morning, defendant filed a motion for continuance. By this time, Rodriguez was out of the country on vacation. The trial court denied the motion.

At trial, defendant asserted Rodriguez was a critical impeachment witness because he was the first to respond to the scene; therefore, he could testify about response times; and he could testify about being told that the person fleeing Oliver's house had a bloody gauze bandage on his hand. According to defense counsel, Oliver said she did not see any blood or remember whether the man's arm was wrapped, and Salazar testified she did not see any blood. Therefore, defense counsel argued that Rodriguez was the only person who could identify the source of the information, contained in his field notes, that the man fleeing the scene wore a bloody bandage. On appeal, defendant asserts his inability to procure Rodriguez's testimony "severally diminished" his defense. How-

ever, he does not point to specific prejudice. *See Wright*, 28 S.W.3d at 533. The bare assertion that his defense was "diminished" does not alone establish prejudice. *Heiselbetz v. State*, 906 S.W.2d 500, 511–12 (Tex.Crim.App.1995) (bare assertion that attorney did not have time to interrogate State's potential witnesses did not alone establish prejudice). Because defendant has not shown that the denial of his motion for continuance resulted in actual prejudice, he has not established an abuse of discretion on the trial court's part.

## LESSER–INCLUDED OFFENSES

Finally, defendant asserts the trial court erred in not instructing the jury on the lesser-included offenses of criminal mischief and trespass.

A defendant is entitled to a charge on a lesser-included offense if: (1) the offense is a lesser-included offense of the alleged offense, and (2) some evidence is adduced at trial to support such an instruction. *Hall v. State*, 225 S.W.3d 524, 535 (Tex.Crim.App.2007). The first step in the lesser-included-offense analysis is a question of law, which does not depend on the evidence to be produced at the trial. *Id.* A determination of whether an offense is a lesser-included offense "may be, and to provide notice to the defendant must be, capable of being performed before trial by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense." *Id.* at 535–36.

"The second step in the analysis should ask whether there is evidence that supports giving the instruction to the jury." *Id.* at 536. A defendant is entitled to an instruction on a lesser-included offense if the proof for the charged offense includes the proof necessary to establish the lesser-included offense and there is some evidence in the record that would

permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense. *Id.* "In this step of the analysis, anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge." *Id.* "In other words, the evidence must establish the lesser-included offense as 'a valid, rational alternative to the charged offense.'" *Id.* (citation omitted).

■ Applying the first step of the analysis here, "we consider only the statutory elements of [burglary] as they were modified by the particular allegations in the indictment." *Id.* A person commits the offense of burglary, as charged in this case, if, without the effective consent of the owner, he enters a habitation with the intent to commit theft. Tex. Pen.Code Ann. § 30.02(a)(1) (Vernon 2003). We next compare these elements to the lesser offense of criminal mischief. A person commits the offense of criminal mischief if, without the effective consent of the owner: (1) he intentionally or knowingly damages or destroys the tangible property of the owner; (2) he intentionally or knowingly tampers with the tangible property of the owner and causes pecuniary loss or substantial inconvenience to the owner or a third person; or (3) he intentionally or knowingly makes markings, including inscriptions, slogans, drawings, or paintings, on the tangible property of the owner. *Id.* § 28.03(a) (Vernon 2006). "We then ask the question Article 37.009(a) poses: are the elements of the lesser offense 'established by proof of the same or less than all the facts required to establish the commission of the offense charged.'" *Hall,* 225 S.W.3d at 536 (quoting Tex.Code Crim. Proc. Ann. art. 37.09(a)(1) (Vernon 2006)). Here, the answer is no. The facts required to prove criminal mischief include elements that are not the same as, or less than, those required to establish the

charged offense of burglary. Therefore, defendant was not entitled to an instruction on criminal mischief.

■ As to a similar comparison for the lesser offense of criminal trespass, the Court of Criminal Appeals has already held that the offense of criminal trespass is a lesser-included offense of burglary. *See Day v. State,* 532 S.W.2d 302, 306 (Tex. Crim.App.1975). Therefore, we next consider whether there was evidence adduced at trial that supported giving the instruction to the jury. *See Hall,* 225 S.W.3d at 536. The elements of criminal trespass are: (1) a person; (2) without effective consent; (3) enters or remains on the property, building, or aircraft of another; (4) knowingly, intentionally, or recklessly; and (5) when he had notice that entry was forbidden or received notice to depart but failed to do so. Tex. Pen.Code Ann. § 30.05(a). Here, the evidence established that defendant threw a potted cactus through Oliver's window, after which Oliver saw defendant put his hand through the window. Although nothing was taken from the house, there is no evidence to support a finding that defendant intended to commit an offense other than theft or to otherwise explain his actions. *See Moreno v. State,* 702 S.W.2d 636, 640 (Tex.Crim. App.1986) (defendant's testimony that he awoke, heard dogs barking, saw the truck missing, the trailer house door open, and went "over there" "just to see what was going on"; and he entered the trailer and took two steps into the living room before being accosted, together with all the circumstances presented at trial, raised a disputed fact question on a required element of burglary of a habitation; thus, there was some evidence defendant, if guilty, was guilty only of criminal trespass); *Waddell v. State,* 918 S.W.2d 91, 94 (Tex. App.-Austin 1996, no writ) (defendant's statement to property caretaker that he

entered the house to look for a cat, corroborated by the testimony of his sister at trial, raised evidence of a lack of a specific intent on his part to commit a felony or theft). There is, therefore, no evidence in the record that would permit a jury to conclude that, if guilty, defendant is guilty only of the lesser-included offense of criminal trespass. Accordingly, defendant was not entitled to an instruction on criminal trespass.

## CONCLUSION

We overrule defendant's issues on appeal and affirm the trial court's judgment.