NUMBER 13-08-00274-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


JUSTIN HINOJOSA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 117th District Court of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Benavides


Memorandum Opinion by Justice Benavides


 

 Appellant, Justin Hinojosa, appeals his conviction for aggravated robbery. See Tex.
Penal Code Ann. § 29.03 (Vernon 2003). After a bench trial, (1) the trial court found Hinojosa
guilty and sentenced him to thirty years' confinement in the Texas Department of Criminal
Justice--Institutional Division and assessed court costs. By a single issue, Hinojosa
argues that the trial court erroneously admitted (1) an out-of-court identification of Hinojosa
that was impermissibly suggestive in violation of his due process rights, and (2) an in-court
identification that was tainted by the out-of-court identification procedure. See U.S. Const.
amend. XIV. We affirm. (2)

I. Applicable Law

 "An in-court identification is inadmissible when it has been tainted by an
impermissibly-suggestive pretrial photographic identification." Ibarra v. State, 11 S.W.3d
189, 195 (Tex. Crim. App. 1999). "The test is whether, considering the totality of the
circumstances, 'the photographic identification procedure was so impermissibly suggestive
as to give rise to a very substantial likelihood of irreparable misidentification.'" Id. (quoting
Simmons v. United States, 390 U.S. 377, 384 (1968)). Thus, courts must conduct a two-step inquiry, determining (1) whether the lineup procedure was impermissibly suggestive,
and (2) whether the procedure gave rise to a substantial likelihood of an irreparable
misidentification. Id. 

 The manner in which a photo lineup is conducted may create a suggestive
atmosphere. Id. Even if the procedure is suggestive, however, we focus on whether the
identification is nevertheless reliable. Id. (citing Webb v. State, 760 S.W.2d 263, 269 (Tex.
Crim. App. 1988)). To make that determination, we weigh the following five, non-exclusive
factors against "the corrupting effect of any suggestive identification procedure in
assessing reliability under the totality of the circumstances": (1) the opportunity of the
witness to view the criminal at the time of the crime; (2) the witness'[s] degree of attention;
(3) the accuracy of the witness'[s] prior description of the criminal; (4) the level of certainty
demonstrated by the witness at the confrontation, and (5) the length of time between the
crime and the confrontation." Id. (quoting Neil v. Biggers, 409 U.S. 188, 199 (1972)). 

 Additionally, regardless of how suggestive an identification procedure is, when there
is no official action that contributes to the likelihood of a misidentification, the sanction of
excluding the identification testimony should not be applied. Rogers v. State, 774 S.W.2d
247, 260 (Tex. Crim. App. 1989), overruled on other grounds, Peek v. State, 106 S.W.3d
72, 79 (Tex. Crim. App. 2003); see also Joshua v. State, No. 14-02-00730-CR, 2003 WL
21782556, at *2 & n.6 (Tex. App.-Houston [14 Dist.] July 31, 2003, pet. ref'd) (mem. op.,
not designated for publication) ("In this case, the complained of photo viewing was not
conducted by or at the behest of government officials."). 

 When reviewing a trial court's decision to admit identification testimony, "[w]e
consider the five Biggers factors, all issues of historical fact, deferentially in a light
favorable to the trial court's ruling." Ibarra, 11 S.W.3d at 195-96. "The factors, viewed in
this light, are then weighed de novo against 'the corrupting effect' of the suggestive pretrial
identification procedure." Id. (quoting Loserth v. State, 963 S.W.2d 770, 773-74 (Tex.
Crim. App.1998)).

II. Discussion


 Garcia, the victim, identified Hinojosa as his attacker at trial. Hinojosa argues that
Garcia identified him as a result of a suggestive identification procedure conducted before
trial. First, Hinojosa argues that an out-of-court photo lineup was impermissibly suggestive
because, prior to the photo lineup, a probation officer showed Garcia a photo of Hinojosa. 
Second, Hinojosa argues that an investigator conducting the photo lineup told Garcia that
Hinojosa was in the lineup. The trial court rejected these arguments and admitted
testimony regarding the out-of-court and the in-court identification. 

A. Probation Officer's Conduct in Providing the Photograph

 First, Hinojosa argues that Garcia's prior viewing of a photograph provided by a
probation officer tainted the later photo lineup and the in-court identification. The State
argues that Hinojosa has not explained how the probation officer's conduct constitutes
"police action;" thus, the constitutional sanction of inadmissibility should not apply. While
it may seem like a foregone conclusion that a probation officer, an agent of the State, acts
at the behest of the State, we agree with the State that Hinojosa failed his burden under
the facts of this case.

 Hinojosa selectively quotes portions of the record without addressing or explaining
contrary evidence that supports the trial court's ruling denying his motion to suppress the
identification testimony. In particular, Hinojosa does not explain why the probation officer's
conduct constituted State action sufficient to warrant the sanction of exclusion. In fact, the
record shows that after Garcia's assault and subsequent release from the hospital, Garcia
spoke to a friend named Jimmy Avalos who had recently been the victim of a burglary. 
Avalos told Garcia that someone had broken into his son's house. Avalos said that he
knew who had committed the burglary and mentioned Hinojosa's name. Garcia asked
Avalos to describe the perpetrator, and Avalos described a person resembling Garcia's
attacker. 

 Garcia then contacted his son's girlfriend, Gracie Guerra, who is a probation officer. 
Garcia testified that he "asked her if she knew anything about this guy who had assaulted
me. And she said she would get some information, and she got me a small picture, you
know, of the guy because I knew his name already, but the guy in the picture didn't look
like him." Later, on cross-examination, Garcia again stated that based on the picture he
was shown, he was unable to identify Hinojosa as the person who assaulted him. 

 Guerra was then called to testify. She stated that she is employed by the Nueces
County Adult Probation Department. She recalled that Garcia contacted her and informed
her that "he had heard of a robbery that had happened or a burglary and that a suspected
person, Mr. Hinojosa, Justin Hinojosa was the one who did it and that he asked if he was
on probation." Guerra confirmed that Hinojosa was on probation. Garcia then asked
Guerra if he could see a picture of Hinojosa, so she printed out a picture and took it to
Garcia when she got off work. After Guerra showed Garcia the picture, Garcia said, "Well,
I'm not sure because the person who did this to me had facial hair." 

 Guerra testified that she was not working for the police department or the sheriff's
department when she showed Garcia the picture. Guerra stated that she did not suggest
in any way that Hinojosa had committed the assault on Garcia. She had no knowledge of
the case at that time and did not work to investigate the case against Hinojosa. On cross-examination, she admitted that her supervisor had asked her to type a report against
Hinojosa, but she did not personally work on the case otherwise.

 Hinojosa does not address any of this testimony, nor does he explain why the
exclusionary rule should apply where (1) Garcia initiated the contact with Guerra; (2)
Garcia already knew Hinojosa's identity and specifically asked for his picture; (3) Guerra
testified she was not acting on behalf of the investigators on the case when she provided
the photo; and (4) Guerra did not suggest, in any way, that Hinojosa was Garcia's attacker. 
Rogers, 774 S.W.2d at 260; see also Joshua, 2003 WL 21782556, at *2 & n.6. Under the
circumstances, we refuse to apply the exclusionary rule because Guerra's conduct in
showing Garcia the picture was not at the behest of the State and was not State action. 
Rogers, 774 S.W.2d at 260; see also Joshua, 2003 WL 21782556, at *2 & n.6. 

B. The Photo Lineup

 Second, Hinojosa argues that the investigating officer, Sergeant Diana Leal, showed
Garcia a photo lineup but also informed him that Hinojosa was present in the lineup. 
Specifically, Hinojosa points to the following testimony from Garcia during cross-examination:

 DEFENSE COUNSEL: Okay. And do you recall that you were not able
to identify anybody in that--in that lineup, the
first time that you looked at it?


 GARCIA: No. I identified him when the la--when the
Sheriff's Department brought me the pictures,
the six pictures that came from the police
department, I identified him, yes, sir, I did.


 DEFENSE COUNSEL: Okay. You don't recall telling the detective,
Detective Leal that--that the photo looked
familiar to you but you weren't sure?


 GARCIA: I don't remember that.

 

 DEFENSE COUNSEL: Do you remember them looking at a black and
white line-up, in other words, all the photos were
black and white? 

 

 GARCIA: Like I said, there were six pictures at the time
that she showed me.

 

 DEFENSE COUNSEL: Okay. Do you remember asking the detective,
"Are these all the pictures that you have"?

 

 GARCIA: I asked them if the--that he was in the line-up
and she said, "Yes."

 

 DEFENSE COUNSEL: I'm sorry?

 

 GARCIA: I asked her if the guy, Justin Hinojosa, was there
in the line-up.

 

 DEFENSE COUNSEL: So you asked the officer, "Is Justin Hinojosa in
the lineup," and the detective told you, "Yes"?

 

 GARCIA: Yes. 


 Once again, however, Hinojosa ignores other testimony in the record that supports
the court's ruling. Sergeant Leal testified that she did not tell Garcia that Hinojosa was in
the lineup:

 STATE: When you showed him the line-up, did you tell him[,]
"Name a suspect, he is in here, pick him out," or did you
show him a line-up with six individuals and you don't tell
him anything else and you tell him, "Do you recognize
the individual that hurt you or hit you," or how do you do
that?


 LEAL: Right. I approached him, I said, "I have a photo line-up
of some pictures. I want to know if you are able to
recognize the person who assaulted you that night."


 STATE: Okay.


 LEAL: And he said, "Okay."

 

 . . . . 

 

 STATE: Okay. Did you ever tell him that the person that
assaulted him was in that line-up?

 

 LEAL: No, I didn't. He--actually, when he was unsure, he
asked me, "Is the person who assaulted me in the line-up?" And I told him, "I don't know, you tell me."

 

 STATE: Okay.

 

 LEAL: "You say you saw him, so you tell me."

 

 STATE: Did he ever ask if Justin Hinojosa was in the line-up?

 

 LEAL: No, he didn't. Oh yes, he did. Well, he didn't ask me
his name, "Is Justin in the line-up," he says, "Is he
here?"

 

 STATE: Okay. 

 

 LEAL: "Is he in the line-up," and I told him, "I don't know. You
tell me." 


 Under the standard of review, we must view issues of historical fact in a light
favorable to the trial court's ruling. Ibarra, 11 S.W.3d at 195-96. The trial court could have
rejected Garcia's testimony about what he was told and chosen to believe Sergeant
Leal--and in fact, the trial court stated on the record that it was doing just that:

 Now, we've got conflicting testimony as to whether or not the detective has
said[,] "The guy is in the line-up," as Mr.--as the victim says, or as the
detective says, "I never would have said that to him." And personally, I'm
here to judge the credibility of the witnesses, I'm here to judge them based
on their lifestyles, based upon their experience[,] and I buy into what the
detective says, is [sic] I don't think she would ever have pointed out the
Defendant, nor would she have told him that Justin Hinojosa is in this line-up.


Thus, the trial court could have properly found that there was no impermissibly suggestive
conduct by the State with respect to the photo line-up. See id. at 195. Accordingly, we
need not address the risk of an improper identification, and we affirm the trial court's ruling
denying Hinojosa's motion to suppress the photo lineup identification. See id.; see also
DeVaughn v. State, 239 S.W.3d 351, 354 (Tex. App.-San Antonio 2007, pet. ref'd)
(holding that when appellant fails to prove that procedure was suggestive, court need not
consider whether there was a risk of an improper identification); see also Williams v. State,
No. 03-08-00633-CR, 2009 WL 2059092, at *8 (Tex. App.-Austin July 17, 2009, no pet.
h.) (mem. op., not designated for publication) (same).


C. In-court Identification

 Because we have found that the out-of-court identification procedures were not
improper, the in-court identification does not suffer any infirmity. See Ibarra, 11 S.W.3d
at 195. 

III. Conclusion

 Having overruled Hinojosa's issue, we affirm.





 

 GINA M. BENAVIDES,

 Justice

 

Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this the 28th day of August, 2009.

1. The State concedes that the judgment of conviction erroneously states that Hinojosa pleaded guilty
to the offense, when in reality, he pleaded not guilty.
2. As this is a memorandum opinion and the parties are familiar with the facts, we will only recite them
herein as necessary to explain our holding. See Tex. R. App. P. 47.4.