

# NUMBER 13-08-00274-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JUSTIN HINOJOSA,                                                    Appellant,

v.

THE STATE OF TEXAS,                                                Appellee.

On appeal from the 117th District Court of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides**
**Memorandum Opinion by Justice Benavides**

Appellant, Justin Hinojosa, appeals his conviction for aggravated robbery. *See* TEX.

PENAL CODE ANN. § 29.03 (Vernon 2003). After a bench trial,[1] the trial court found Hinojosa

guilty and sentenced him to thirty years' confinement in the Texas Department of Criminal

Justice—Institutional Division and assessed court costs. By a single issue, Hinojosa

---

[1] The State concedes that the judgment of conviction erroneously states that Hinojosa pleaded guilty to the offense, when in reality, he pleaded not guilty.

argues that the trial court erroneously admitted (1) an out-of-court identification of Hinojosa that was impermissibly suggestive in violation of his due process rights, and (2) an in-court identification that was tainted by the out-of-court identification procedure. *See* U.S. CONST. amend. XIV. We affirm.[2]

## I. APPLICABLE LAW

"An in-court identification is inadmissible when it has been tainted by an impermissibly-suggestive pretrial photographic identification." *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999). "The test is whether, considering the totality of the circumstances, 'the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Id.* (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). Thus, courts must conduct a two-step inquiry, determining (1) whether the lineup procedure was impermissibly suggestive, and (2) whether the procedure gave rise to a substantial likelihood of an irreparable misidentification. *Id.*

The manner in which a photo lineup is conducted may create a suggestive atmosphere. *Id.* Even if the procedure is suggestive, however, we focus on whether the identification is nevertheless reliable. *Id.* (citing *Webb v. State,* 760 S.W.2d 263, 269 (Tex. Crim. App. 1988)). To make that determination, we weigh the following five, non-exclusive factors against "the corrupting effect of any suggestive identification procedure in assessing reliability under the totality of the circumstances": (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness'[s] degree of attention;

---

[2] As this is a memorandum opinion and the parties are familiar with the facts, we will only recite them herein as necessary to explain our holding. *See* TEX. R. APP. P. 47.4.

(3) the accuracy of the witness'[s] prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation." *Id*. (quoting *Neil v. Biggers*, 409 U.S. 188, 199 (1972)).

Additionally, regardless of how suggestive an identification procedure is, when there is no official action that contributes to the likelihood of a misidentification, the sanction of excluding the identification testimony should not be applied. *Rogers v. State*, 774 S.W.2d 247, 260 (Tex. Crim. App. 1989), *overruled on other grounds*, *Peek v. State*, 106 S.W.3d 72, 79 (Tex. Crim. App. 2003); *see also Joshua v. State*, No. 14-02-00730-CR, 2003 WL 21782556, at *2 & n.6 (Tex. App.–Houston [14 Dist.] July 31, 2003, pet. ref'd) (mem. op., not designated for publication) ("In this case, the complained of photo viewing was not conducted by or at the behest of government officials.").

When reviewing a trial court's decision to admit identification testimony, "[w]e consider the five *Biggers* factors, all issues of historical fact, deferentially in a light favorable to the trial court's ruling." *Ibarra*, 11 S.W.3d at 195-96. "The factors, viewed in this light, are then weighed de novo against 'the corrupting effect' of the suggestive pretrial identification procedure." *Id.* (quoting *Loserth v. State*, 963 S.W.2d 770, 773-74 (Tex. Crim. App.1998)).

## II. DISCUSSION

Garcia, the victim, identified Hinojosa as his attacker at trial. Hinojosa argues that Garcia identified him as a result of a suggestive identification procedure conducted before trial. First, Hinojosa argues that an out-of-court photo lineup was impermissibly suggestive because, prior to the photo lineup, a probation officer showed Garcia a photo of Hinojosa. Second, Hinojosa argues that an investigator conducting the photo lineup told Garcia that

Hinojosa was in the lineup. The trial court rejected these arguments and admitted testimony regarding the out-of-court and the in-court identification.

## A. Probation Officer's Conduct in Providing the Photograph

First, Hinojosa argues that Garcia's prior viewing of a photograph provided by a probation officer tainted the later photo lineup and the in-court identification. The State argues that Hinojosa has not explained how the probation officer's conduct constitutes "police action;" thus, the constitutional sanction of inadmissibility should not apply. While it may seem like a foregone conclusion that a probation officer, an agent of the State, acts at the behest of the State, we agree with the State that Hinojosa failed his burden under the facts of this case.

Hinojosa selectively quotes portions of the record without addressing or explaining contrary evidence that supports the trial court's ruling denying his motion to suppress the identification testimony. In particular, Hinojosa does not explain why the probation officer's conduct constituted State action sufficient to warrant the sanction of exclusion. In fact, the record shows that after Garcia's assault and subsequent release from the hospital, Garcia spoke to a friend named Jimmy Avalos who had recently been the victim of a burglary. Avalos told Garcia that someone had broken into his son's house. Avalos said that he knew who had committed the burglary and mentioned Hinojosa's name. Garcia asked Avalos to describe the perpetrator, and Avalos described a person resembling Garcia's attacker.

Garcia then contacted his son's girlfriend, Gracie Guerra, who is a probation officer. Garcia testified that he "asked her if she knew anything about this guy who had assaulted me. And she said she would get some information, and she got me a small picture, you

4

know, of the guy because I knew his name already, but the guy in the picture didn't look like him." Later, on cross-examination, Garcia again stated that based on the picture he was shown, he was unable to identify Hinojosa as the person who assaulted him.

Guerra was then called to testify. She stated that she is employed by the Nueces County Adult Probation Department. She recalled that Garcia contacted her and informed her that "he had heard of a robbery that had happened or a burglary and that a suspected person, Mr. Hinojosa, Justin Hinojosa was the one who did it and that he asked if he was on probation." Guerra confirmed that Hinojosa was on probation. Garcia then asked Guerra if he could see a picture of Hinojosa, so she printed out a picture and took it to Garcia when she got off work. After Guerra showed Garcia the picture, Garcia said, "Well, I'm not sure because the person who did this to me had facial hair."

Guerra testified that she was not working for the police department or the sheriff's department when she showed Garcia the picture. Guerra stated that she did not suggest in any way that Hinojosa had committed the assault on Garcia. She had no knowledge of the case at that time and did not work to investigate the case against Hinojosa. On cross-examination, she admitted that her supervisor had asked her to type a report against Hinojosa, but she did not personally work on the case otherwise.

Hinojosa does not address any of this testimony, nor does he explain why the exclusionary rule should apply where (1) Garcia initiated the contact with Guerra; (2) Garcia already knew Hinojosa's identity and specifically asked for his picture; (3) Guerra testified she was not acting on behalf of the investigators on the case when she provided the photo; and (4) Guerra did not suggest, in any way, that Hinojosa was Garcia's attacker. *Rogers*, 774 S.W.2d at 260; *see also Joshua*, 2003 WL 21782556, at *2 & n.6. Under the

circumstances, we refuse to apply the exclusionary rule because Guerra's conduct in showing Garcia the picture was not at the behest of the State and was not State action. *Rogers*, 774 S.W.2d at 260; *see also Joshua*, 2003 WL 21782556, at *2 & n.6.

## B. The Photo Lineup

Second, Hinojosa argues that the investigating officer, Sergeant Diana Leal, showed Garcia a photo lineup but also informed him that Hinojosa was present in the lineup. Specifically, Hinojosa points to the following testimony from Garcia during cross-examination:

| | |
|---|---|
| DEFENSE COUNSEL: | Okay. And do you recall that you were not able to identify anybody in that—in that lineup, the first time that you looked at it? |
| GARCIA: | No. I identified him when the la—when the Sheriff's Department brought me the pictures, the six pictures that came from the police department, I identified him, yes, sir, I did. |
| DEFENSE COUNSEL: | Okay. You don't recall telling the detective, Detective Leal that—that the photo looked familiar to you but you weren't sure? |
| GARCIA: | I don't remember that. |
| DEFENSE COUNSEL: | Do you remember them looking at a black and white line-up, in other words, all the photos were black and white? |
| GARCIA: | Like I said, there were six pictures at the time that she showed me. |
| DEFENSE COUNSEL: | Okay. Do you remember asking the detective, "Are these all the pictures that you have"? |
| GARCIA: | I asked them if the—that he was in the line-up and she said, "Yes." |
| DEFENSE COUNSEL: | I'm sorry? |

6

| | |
|---|---|
| GARCIA: | I asked her if the guy, Justin Hinojosa, was there in the line-up. |
| DEFENSE COUNSEL: | So you asked the officer, "Is Justin Hinojosa in the lineup," and the detective told you, "Yes"? |
| GARCIA: | Yes. |

Once again, however, Hinojosa ignores other testimony in the record that supports the court's ruling. Sergeant Leal testified that she did not tell Garcia that Hinojosa was in the lineup:

| | |
|---|---|
| STATE: | When you showed him the line-up, did you tell him[,] "Name a suspect, he is in here, pick him out," or did you show him a line-up with six individuals and you don't tell him anything else and you tell him, "Do you recognize the individual that hurt you or hit you," or how do you do that? |
| LEAL: | Right. I approached him, I said, "I have a photo line-up of some pictures. I want to know if you are able to recognize the person who assaulted you that night." |
| STATE: | Okay. |
| LEAL: | And he said, "Okay." |
| | . . . . |
| STATE: | Okay. Did you ever tell him that the person that assaulted him was in that line-up? |
| LEAL: | No, I didn't. He—actually, when he was unsure, he asked me, "Is the person who assaulted me in the line-up?" And I told him, "I don't know, you tell me." |
| STATE: | Okay. |
| LEAL: | "You say you saw him, so you tell me." |
| STATE: | Did he ever ask if Justin Hinojosa was in the line-up? |

7

| | |
|---|---|
| LEAL: | No, he didn't. Oh yes, he did. Well, he didn't ask me his name, "Is Justin in the line-up," he says, "Is he here?" |
| STATE: | Okay. |
| LEAL: | "Is he in the line-up," and I told him, "I don't know. You tell me." |

Under the standard of review, we must view issues of historical fact in a light favorable to the trial court's ruling. *Ibarra*, 11 S.W.3d at 195-96. The trial court could have rejected Garcia's testimony about what he was told and chosen to believe Sergeant Leal—and in fact, the trial court stated on the record that it was doing just that:

> Now, we've got conflicting testimony as to whether or not the detective has said[,] "The guy is in the line-up," as Mr.—as the victim says, or as the detective says, "I never would have said that to him." And personally, I'm here to judge the credibility of the witnesses, I'm here to judge them based on their lifestyles, based upon their experience[,] and I buy into what the detective says, is [sic] I don't think she would ever have pointed out the Defendant, nor would she have told him that Justin Hinojosa is in this line-up.

Thus, the trial court could have properly found that there was no impermissibly suggestive conduct by the State with respect to the photo line-up. *See id.* at 195. Accordingly, we need not address the risk of an improper identification, and we affirm the trial court's ruling denying Hinojosa's motion to suppress the photo lineup identification. *See id.*; *see also DeVaughn v. State*, 239 S.W.3d 351, 354 (Tex. App.–San Antonio 2007, pet. ref'd) (holding that when appellant fails to prove that procedure was suggestive, court need not consider whether there was a risk of an improper identification); *see also Williams v. State*, No. 03-08-00633-CR, 2009 WL 2059092, at *8 (Tex. App.–Austin July 17, 2009, no pet. h.) (mem. op., not designated for publication) (same).

## C.    In-court Identification

Because we have found that the out-of-court identification procedures were not improper, the in-court identification does not suffer any infirmity.  *See Ibarra*, 11 S.W.3d at 195*.*

### III. Conclusion

Having overruled Hinojosa's issue, we affirm.

GINA M. BENAVIDES,
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and
filed this the 28th day of August, 2009.