NO. 07-08-0479-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

SEPTEMBER 28, 2009
______________________________

BOBBY WAYNE TERRY, 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant

v.

THE STATE OF TEXAS, 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
_________________________________

FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NO. 57653-A; HON. HAL MINER, PRESIDING
_______________________________

Opinion
_______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
Â Â Â Â Â Â Â Â Â Â Bobby Wayne Terry was convicted of burglary of a building. He seeks reversal of
that conviction because the trial court failed to instruct the jury on the purported lesser-
included offense of criminal trespass. We affirm the judgment. 
Â Â Â Â Â Â Â Â Â Â BackgroundÂ 
Â Â Â Â Â Â Â Â Â Â On April 1, 2008, around 8:00 p.m., police officers responded to a burglar alarm that
went off at Cruz Construction Company in Amarillo. Upon their arrival, they discovered that
a cinder block had been thrown through a plate glass door of the building. Thereafter,
appellant was found standing in the building by a desk. Atop the desk were papers that
had been strewn about. The police arrested and mirandized appellant. Subsequently, he
informed them that âhe used a key to get in and was there because he was previously
employed by Cruz Construction and they owed him some money and he was there to get
his check.â John Cruz testified that appellant had never worked for the company and did
not have permission to be in the building. Nothing was found to be missing from the office. 
Â Â Â Â Â Â Â Â Â Â Applicable Authority and Analysis 
Â Â Â Â Â Â Â Â Â Â Appellant sought an instruction on the lesser-included offense of criminal trespass. 
For him to be entitled to it, a two-pronged test must be satisfied. First, the elements of the
purported lesser offense must be included within the proof necessary to establish the
greater offense and, second, some evidence must appear of record that would permit a
jury to rationally find that if appellant was guilty of anything, it was only of the lesser
offense. Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). In
considering the first prong, we compare the elements of the lesser crime to those of the
greater as the latter are described in the indictment. Hall v. State, 225 S.W.3d 524, 535-36
(Tex. Crim. App. 2007). If the elements of the lesser offense are not included in the
wording of the crime as alleged in the indictment, it is not a lesser-included offense.
Â Â Â Â Â Â Â Â Â Â With respect to the second prong, if there is more than a scintilla of evidence from
any source indicating that the defendant is guilty only of the lesser offense, the instruction
must be given. Forest v. State, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999). However,
that evidence in question must affirmatively negate the element present in the greater
offense but absent in the lesser. Morris v. State, No. 07-99-0498-CR, 2000 Tex. App.
Lexis 7181 at *5 n.1 (Tex. App.âAmarillo October 25, 2000, pet. refâd) (not designated for
publication). It is not enough to simply rely on the Stateâs failure to prove the particular
element. 
Â Â Â Â Â Â Â Â Â Â Next, to be guilty of burglarizing a building (as charged in the indictment before us),
the State was required to prove that appellant, with intent to commit theft, entered a
building or a portion of a building not then open to the public without the effective consent
of the owner. See Tex. Penal Code Ann. Â§30.02(a)(1) (Vernon 2003). Given that a person
commits criminal trespass if he enters or remains in a building without effective consent
and had notice that the entry was forbidden or he received notice to depart but failed to do
so, id. Â§30.05(a) (Vernon Supp. 2008), it is arguable that the elements of criminal trespass
fell within the scope of the offense encompassed by the indictment. See De Vaughn v.
State, 239 S.W.3d 351, 356 (Tex. App.âSan Antonio 2007, pet. refâd) (so holding based
on the indictment before that court).


 Consequently, we assume arguendo that such is the
situation here. So, that leaves us with considering whether the second prong of Rousseau
was satisfied.
Â Â Â Â Â Â Â Â Â Â Upon reviewing the record, we find evidence that appellant had been but was no
longer an employee of Cruz Construction, had a key to the Cruz Construction office, used
that key to enter the office building after it was closed, believed Cruz Construction owed
him money, and entered the building with the intent to obtain a check. Because of this
evidence, appellant believed the State failed to prove that element of burglary requiring
entry with intent to commit theft. Yet, as previously mentioned, the Stateâs failure to prove
an element of the greater offense does not alone entitle the accused to an instruction on
the lesser offense. 
Â Â Â Â Â Â Â Â Â Â As for the possibility that evidence of appellantâs entry with a key to obtain payment
for a purported debt constitutes some affirmative evidence negating an intent to commit
theft, we say this. Simply possessing a key to a building may signify that one has the
ability to gain entry into the building. Yet, having that ability alone does not permit one to
reasonably infer that entry was or would be authorized; this is so because the key could
have been obtained through various means, some legitimate and others not. And, here,
the record contains no specific information about how appellant secured his alleged key. 
Nor can a jury reasonably infer, given the record at bar, that he legitimately obtained it
while a supposed employee of Cruz Construction. Doing so would require it to assume
that Cruz Construction not only supplied keys to its employees but also that employees
were not obligated to return them once the employment relationship ceased (as it allegedly
did here). Assumptions are not evidence. 
Â Â Â Â Â Â Â Â Â Â Moreover, even if it was possible to deduce from the mere possession of a key that
the possessor was allowed to enter, that would not be of benefit to appellant. This is so
because the very same inference would tend to negate an element of criminal trespass. 
Simply said, if appellant was entitled to enter the property because he had a key, then his
presence was not without the effective consent of the property owner or occupant. And,
if it was not without the effective consent of the legitimate occupant or property owner (i.e.
if it was with such consent), then the accused failed to trespass.
Â Â Â Â Â Â Â Â Â Â As for the matter of his purported presence after hours to collect a supposed debt
due him, we are quite hesitant to suggest that being owed an unsecured debt somehow
entitles the creditor to invoke self-help, enter the debtorâs home or building without consent,
and take what is supposedly due. This is especially so given the absence of any evidence
tending to show that a party authorized to act on behalf of Cruz Construction authorized
appellantâs entry. Moreover, appellant cites no authority swaying us to conclude otherwise. 
So, without knowing of any authority granting a non-lien holding creditor such a right,
appellantâs entry, without the ownerâs consent, to take property (i.e. a check) within the
building cannot but be construed as entry with intent to deprive the owner of property. 
Â Â Â Â Â Â Â Â Â Â In sum, we conclude that the requirements of Rosseau were not satisfied and that
appellant was not entitled to the instruction sought. The judgment of the trial court is
affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Brian Quinn
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Publish.




fficient because Jacqueline never testified as to any sexual contact, i.e., no
clothes were torn, undone, or unzipped, nor was any genitalia exposed.

 An attempt to commit an offense occurs if, "with specific intent to commit an offense,
he [the accused] does an act amounting to more than mere preparation that tends but fails
to effect the commission of the offense intended." Tex. Pen. Code Ann. §15.01(a) (Vernon
2003). A person's conduct constitutes an attempt to commit the aggravated offense if an
element that aggravates the offense accompanies the attempt. Id. Â§15.01(b).

 A person commits aggravated sexual assault if he "intentionally or knowingly causes
the penetration of the anus or female sexual organ of another person by any means, without
that person's consent" and "uses or exhibits a deadly weapon in the course of the same
criminal episode." Tex. Pen. Code Ann. Â§22.021(a)(1)(A) & (a)(2)(A)(iv) (Vernon Supp.
2004). In its relevant charge, the jury was instructed that it could convict if it found beyond
a reasonable doubt that appellant: 

 with the specific intent to commit the offense of Aggravated Sexual Assault
of Jacqueline Vasquez, [did] an act, namely, striking Jacqueline Vasquez in
the head and instructing Jacqueline Vasquez to spread her legs, which
amounted to more than mere preparation that tended but failed to effect the
commission of the offense, and in the commission of the offense, the
defendant used or exhibited a deadly weapon, namely a firearm . . . .


The jury was additionally instructed in pertinent part that "[o]ur law provides that a person
commits the offense of aggravated sexual assault if the person intentionally or knowingly
causes the penetration of the female sexual organ of another person by any means, without
that person's consent." It was further instructed that an attempt to commit an offense
occurs "if, with specific intent to commit an offense, a person does an act amounting to
more than mere preparation that tends, but fails, to effect the commission of the offense
intended." The jury charge satisfactorily tracked the applicable statutes.

 At trial, Abraham averred that appellant made gestures at Jacqueline, including
"grabbing his testicles." Appellant also hit Jacqueline in the face with the gun. Jacqueline
testified that after appellant grabbed his crotch, he tried to force her legs apart with his gun. 
The evidence was amply sufficient to support a conclusion that appellant had the specific
intent to have intercourse with Jacqueline without her consent. In particular, his acts in
trying to spread her legs apart after grabbing his crotch is sufficient to justify a conclusion
as to appellant's specific intention without the necessity of having actual sexual contact with
her or appellant having actually exposed his genitals. Appellant's third perceived issue is
overruled.

 In his fourth perceived issue, appellant argues the evidence is not sufficient to
support his kidnapping conviction. In particular, he argues it is insufficient because
Jacqueline was never abducted, she was in her home which was a safe place, and no
weapons were shown or produced at trial to show she was held against her will. The statute
provides that a person commits the offense of aggravated kidnapping if he "intentionally or
knowingly abducts another person with the intent to . . . inflict bodily injury on [her] or abuse
[her] sexually" or if he "intentionally or knowingly abducts another person and uses or
exhibits a deadly weapon during the commission of the offense." Tex. Pen. Code Ann.
Â§20.04(a)(4) Â§ (b) (Vernon 2003).

 With regard to the application paragraph, the jury was charged that it might convict
if it found beyond a reasonable doubt that appellant "intentionally or knowingly abducted
Jacqueline Vasquez, with the intent to prevent her liberation, by using or threatening to use
deadly force, namely threatening to shoot her with a firearm, and with the intent to inflict
bodily injury on Jacqueline Vasquez or violate or abuse her sexually." The charge
satisfactorily tracked the statute.

 The definition portion of the jury charge tracked the statutory definitions for "abduct"
and "restrain" as follows:

 "ABDUCT" means to restrain a person with intent to prevent her liberation by
using or threatening to use deadly force.


 "RESTRAIN" means to restrict a person's movements without consent so as
to interfere substantially with her liberty, by moving her from one place to
another or by confining her. Restraint is "without consent" if it is
accomplished by force, intimidation or deception.


See Tex. Pen. Code Ann. Â§20.01(1)(A) & (2)(B) (Vernon Supp. 2004).

 Jacqueline's testimony, which we have recited in some detail, is amply sufficient to
show that appellant restrained her freedom to move with the use of force and with a gun. 
Abraham's testimony that he saw appellant holding Jacqueline with the use of a gun
sufficiently corroborates her testimony. Perceived issue four is overruled.

 In his fifth perceived issue, appellant posits that the trial court reversibly erred in
refusing an instruction on the lesser-included offenses of assault, attempted sexual assault,
kidnapping, unlawful restraint, and false imprisonment. Parenthetically, in 1997, the
legislature renamed the crime of "false imprisonment," and it is now called "unlawful
restraint." However, substantively, the former "false imprisonment" and the current
"unlawful restraint" statutes are identical. (2) 

 Before a jury charge on a lesser-included offense must be given, a two prong test
must be met, namely: 1) the lesser-included offense must be included within the proof
necessary to establish the offense charged; and 2) some evidence must exist within the
record that if the defendant is guilty, he is guilty only of the lesser offense. Both prongs of
the test must be met, regardless of whether such an instruction is requested by the
defendant or the State. Hampton v. State, 109 S.W.3d 437, 440 (Tex. Crim. App. 2003).

 There is no evidence in the record that would justify the inclusion of the lesser-
included offenses. Each of the offenses committed became aggravated by the use of a
gun. As we have discussed, the actual production of the gun used was not necessary. The
evidence we have discussed above, if accepted by the jury, clearly shows the use of a gun. 
There is no evidence that a gun was not used in the commission of any offense committed
by appellant. Perceived issue five is overruled.

 In his sixth perceived issue, appellant argues that he was deprived of his
constitutional right to a trial jury drawn from a representative cross-section of the community
and the trial court reversibly erred in failing to quash the jury panel. In his seventh
perceived issue, he argues that his lawyer's failure to challenge the jury array in a sworn
pleading demonstrates ineffective assistance of trial counsel. The record reveals that one
venire person asserted there was only one black person on the jury list. In response to that
comment, the trial court noted that while it was true there were "very few" African-Americans
on the panel, the African-American population percentage of the county was "less than
three percent now." 

 To satisfy the federal Sixth Amendment right to a jury trial, that jury must be chosen
from a panel representing a fair cross-section of the community. Duren v. Missouri, 439
U.S. 357, 359, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); Castaneda v. Partida, 430 U.S. 482,
494, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). In Pondexter v. State, 942 S.W.2d 577 (Tex.
Crim. App. 1996), cert. denied, 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997), the
Court instructed that to establish a prima facie violation of that requirement, an appellant
must show: 1) the group alleged to be excluded is a "distinctive" group in the community;
2) the representation of this group in venires from which juries are selected is not fair and
reasonable in relation to the number of such persons in the community; and 3) this under-
representation is due to the systematic exclusion of the group in the jury selection process. 
Id. at 580.

 Appellant arguably has met the first prong of the test, i.e., the group alleged to be
excluded is a "distinctive" one within the community. However, appellant has failed to meet
the second and third prongs of the test. Nothing in the record is actually sufficient to show
the racial composition of the panel. Moreover, assuming that there was only one African-American on the particular jury panel, there is nothing to show the requisite "systematic
exclusion" of that racial group in the county of trial. A disproportionate representation in a
single panel is not sufficient to demonstrate an unconstitutional systematic exclusion of
distinctive racial groups. Pondexter, 942 S.W.2d at 581. Indeed, in view of the judge's
statement as to the racial mix extant in the county, the paucity of African-Americans on the
particular jury panel would seem to be more likely the result of the small percentage of that
racial group in the county than the result of a systematic exclusionary policy. Appellant's
perceived issue six is overruled.

 In his seventh perceived issue, appellant argues he did not receive effective
assistance of counsel at trial. In the seminal case of Strickland v. Washington, 466 U.S.
668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court instructs that the benchmark for
judging any claim of counsel ineffectiveness must be whether his trial conduct so
undermined the proper functioning of the adversarial process as to demonstrate that the
trial cannot be relied upon as having produced a just result. Id. 466 U.S. at 696. That
standard was pronounced applicable to all such claims in Texas by the court in Hernandez
v. State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999).

 The standard for showing ineffective assistance of counsel is usually stated as
having two parts, i.e., attorney performance and resulting prejudice. It is usually stated as:
1) whether counsel's performance was deficient; and 2) whether, but for counsel's deficient
performance, the result of the proceeding would have been different. Hernandez, 988
S.W.2d at 770, n.3. Absent both showings, we cannot conclude that appellant's conviction
resulted from a breakdown in the adversarial process that renders the result unreliable. 
Boyd v. State, 811 S.W.2d 105, 109 (Tex. Crim. App.), cert. denied, 502 U.S. 971, 112
S.Ct. 448, 116 L.Ed.2d 466 (1991). Additionally, by statute, Montgomery County was
required to select venires by computer from voter registration and driver's license lists. 
Suffice it to say, appellant has failed to meet the requisites of the Strickland test to show his
trial counsel adversely affected the outcome of his trial by failing to challenge the jury
venire. Appellant's seventh perceived issue is overruled.

 In his eighth and ninth challenges, appellant contends the trial court reversibly erred
in denying his motion to suppress the in-court identification of him as the miscreant because
it was the result of an impermissibly suggestive photographic lineup not entirely composed
of black males and because of suggestive actions by the police at the scene. The
photographic lineup received in evidence is shown as a part of the record. Although
Jacqueline testified that the lineup was not composed entirely of African-American males,
her identification of appellant as her assailant was firm and unweakened under cross-examination. She testified that when she had just taken the trash to the trash can, appellant
put a gun to her head, and she saw "a guy and he had his gun pointed right at my face" a
few inches away. When appellant told her to go into the garage, she said she could see
appellant "because the light in the kitchen was still on, and since on our door that's between
the kitchen and the garage, there's a window between the middle of the door, so the
reflection in light from the kitchen went through the window, and there was some light in the
garage." The record shows that she spoke to him when he was right in front of her and
when she asked what he wanted, he was still in front of her when he grabbed his testicles. 
He was close to her when he tried to push her legs apart with the gun and when he hit her
in the face with the gun. While the lineup may not have been composed exclusively of
black males, the color of appellant's skin was not so significantly different from that of the
other participants as to make him stand out.

 To be entitled to reversal, an appellant must show by clear and convincing evidence
that the identification was irreparably tainted. See Barley v. State, 906 S.W.2d 27, 32-35
(Tex. Crim. App. 1995), cert. denied, 516 U.S. 1176, 116 S.Ct. 1271, 134 L.Ed.2d 217
(1996). Appellant has failed to make this showing. Appellant's eighth and ninth perceived
issues are overruled. 

 In his tenth perceived issue, appellant contends the trial court reversibly erred in
admitting his "juvenille [sic] court adjudication." However, in pertinent part, article 37.07 of
the Code of Criminal Procedure provides that "evidence may be offered by the state and
the defendant of an adjudication of delinquency based on a violation by the defendant of
a penal law of the grade of: (A) a felony; or (B) a misdemeanor punishable by confinement
in jail." Tex. Code Crim. Proc. Ann. art. 37.07Â§3(a)(1) (Vernon Supp. 2004). The State's
exhibits in question reflect that appellant had been adjudicated of delinquent conduct for 1)
Assault-Class A misdemeanor; 2) Theft-State Jail Felony for theft of a firearm, and 3)
Criminal Mischief-Class B misdemeanor. These offenses are of a grade punishable by jail
confinement and, by statute, were admissible at trial. Appellant's tenth perceived issue is
overruled.

 In his eleventh perceived issue, appellant contends he was illegally arrested without
a warrant. He bases this contention on an affidavit attached to his brief in which his mother
states she never gave the officers permission to enter her home. However, no such
affidavit appears in the appellate record. Thus, we cannot consider it. See Tex. R. App.
P. 34.1; see also James v. State, 997 S.W.2d 898, 901 n.5 (Tex. App.-Beaumont 1999, no
pet.); Brown v. State, 866 S.W.2d 675, 678 (Tex. App.-Houston [1st Dist.] 1993, pet. ref'd).

 Moreover, appellant testified at the hearing on the motion to suppress evidence. He
admitted that he did not hear what his mother said to the officers. Additionally, Officer
Keleman's testimony that appellant's mother gave him permission to enter her home was
uncontradicted at trial. Appellant's eleventh perceived issue is overruled.

 In summary, all of appellant's perceived issues are overruled, counsel's motion to
withdraw is granted, and the judgment of the trial court is affirmed. 


 John T. Boyd

 Senior Justice


Do not publish. 



 

 

1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. Â§75.002(a)(1) (Vernon Supp. 2004). 
2. See and compare Act of May 29, 1993, 73rd Leg., R.S., ch. 900, Â§1.01, 1993 Tex.
Gen. Laws 3586, 3615 with Tex. Pen. Code Ann. Â§20.02 (Vernon 2003).