

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-10-00051-CR

_____

FELIPE RUBIO GASPAR, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th Judicial District Court
Fannin County, Texas
Trial Court No. 22481

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Felipe Rubio Gaspar was accused of entering the home of Noemi Jiminez,[1] his ex-girlfriend,[2] without the owner's permission, and assaulting her current boyfriend, Pedro Noria Guzman, with a screwdriver. Gaspar was indicted on a charge of burglary of a habitation with intent to commit a felony, and he pled not guilty. After a jury trial, Gaspar was found guilty and sentenced to fifty years' confinement[3] and assessed a $10,000.00 fine.[4]

On appeal, Gaspar argues that there is legally and factually insufficient evidence to support the conviction and that the trial court erred in failing to allow a jury instruction on the lesser-included offense of criminal trespass.[5]

We affirm the conviction because: (1) there is legally sufficient evidence to support the verdict; and (2) there is no evidence that Gaspar is guilty only of criminal trespass.

Under the authority of the very recent *Brooks v. State* opinion where a plurality of the Texas Court of Criminal Appeals abolished the separate factual sufficiency review, No.

---

[1]Through the record and pleadings, Jiminez is also spelled, "Jimenez." In this opinion, we use the "Jiminez" spelling.

[2]There is testimony that Gaspar and Noemi once lived together as husband and wife.

[3]The sentence was to run concurrently with his sentence in cause number 06-10-00050-CR.

[4]Gaspar was also assessed $686.00 in court costs.

[5] With permission, Gaspar submitted one brief for the two appeals (cause numbers 06-10-00050-CR and 06-10-00051-CR) he has pending before this Court.

PD-0210-09, 2010 WL 3894613, at **1, 14 (Tex. Crim. App. Oct. 6, 2010), we do not address

Gaspar's challenge to the factual sufficiency of the evidence.[6]

The Jiminez property is located in Trenton, Fannin County, Texas, and consists of seven

acres that are surrounded by a fence.[7]  Entry onto the property requires travel through a gateway

that has a steel gate.   The property has two trailer houses, one small one and a larger one.   Noemi

owned the smaller trailer and her father owned the land itself and the larger trailer home.

Gaspar and Noemi Jiminez had an on-again, off-again relationship for several years.   At

times, Gaspar and Noemi would live together in Trenton, in the smaller trailer.   Noemi would

occasionally stay at her father's trailer, but Gaspar never lived in the larger trailer.   When their

relationship finally ended,[8] Gaspar moved out of the smaller trailer a few weeks prior to the

incident.

---

[6]In the *Brooks* plurality opinion, the Texas Court of Criminal Appeals found "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis v. State* [922 S.W.2d 126 (Tex. Crim. App. 1996)], factual-sufficiency standard, and these two standards have become indistinguishable." *Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at *8 (Tex. Crim. App. Oct. 6, 2010) (4-1-4 decision). Further, a proper application of the *Jackson v. Virginia* legal sufficiency standard is as exacting a standard as any factual sufficiency standard. *See id.* at *11.  In a concurring opinion, Judge Cochran pointed out that the United States Supreme Court has rejected a legal sufficiency test that requires a finding that "no evidence" supports the verdict because it affords inadequate protection against potential misapplication of the "reasonable doubt" standard in criminal cases. *Id.* at *16 (Cochran, J., concurring). Rather than meeting a mere "no evidence" test, legal sufficiency is judged not by the quantity of evidence, but by the quality of the evidence and the level of certainty it engenders in the fact-finder's mind. *Id.* at *17.  Under the authority of *Brooks*, we do not address the defendant's challenge to the factual sufficiency of the evidence.

[7]The property is owned by Noemi's father, Israel Jiminez.

[8]At the time of the incident, Gaspar's brother, Inocente Gaspar, believed Gaspar and Noemi had reconciled, but he admitted that he had last seen Gaspar about a month prior to the incident.  (Through the record, Inocente is also spelled "Inocenti."   In this opinion, we use the "Inocente" spelling.)

3

After the relationship ended, Gaspar moved in with Jesus Perez, who lived within a mile of Noemi, who had begun a new romantic relationship with Guzman. Guzman, Noemi's father, Israel Jiminez, and Noemi's eleven-year-old son, Nelson Rodriguez, all testified that on the day of the alleged assault, Gaspar came to the Jiminez property, and confronted Guzman, warning him to leave Noemi alone and that Guzman would regret "messing with" her.[9]

After they both got off work, Perez and Gaspar traveled to a restaurant in nearby McKinney, Texas, and "had a few drinks." Upon returning to Perez's home, Gaspar "got on the phone and started arguing" with Noemi. Perez believed Gaspar was arguing about "his kids, and . . . somebody being there with her." Gaspar indicated he was leaving because he had to "go do something over there." Gaspar invited Perez to go with him, but Perez declined, saying, "I don't want no problems." Perez testified that Gaspar was drunk and angry that "the other guy was down there."

At the time of the incident, Noemi was living in the larger trailer, and on that particular night, she, her four children, and Guzman were sleeping in one of the bedrooms, while her father and a few other family members were in the home's other bedrooms. Shortly after midnight that night, Gaspar entered the large trailer home and assaulted Guzman, who was sleeping next to Noemi. Noemi and other family members tried to pull Gaspar off Guzman, but he "got up and kept just going back after [Guzman]." When the two men struggled to the front door area,

---

[9]Whether Perez was with Gaspar during the confrontation is disputed. Israel testified that Perez was there, while Perez denies any involvement.

outside, and back into the living room, where the lights were turned on, Noemi noticed that Guzman was "drenched in blood" and that Gaspar was holding a screwdriver.

After the men were finally separated, Gaspar left the premises. Immediately after Gaspar left, Israel saw a car parked "in front of" the locked gate. The driver started the car and drove away.

Apparently, after Gaspar left the Jiminez premises, he returned to Perez's home. Gaspar told him that he had "wrecked the car" and asked Perez to help him hide it. Perez noticed that both the car and Gaspar were covered in blood, that one of the car's tires was "completely torn up,"and that "the fender was way beyond repair, couldn't be fixed."

After a 9-1-1 call, Officer Ron Alexander arrived at the Jiminez residence and saw blood droplets on the wheelchair ramp outside the home, "quite a bit of blood right there in the front of the door," "blood smeared all over the front door, all over the screen door, a pretty good amount of blood." He testified that Guzman was lying on the floor, bleeding profusely, and that he appeared to have been stabbed several times. Guzman had thirteen puncture wounds to his body, head, and face.

Shortly thereafter, the police arrived at Perez's residence. Alexander noticed "a little splatter of blood" on the glass of Perez's front door. Inside Perez's home, Alexander found Gaspar asleep, saw a screwdriver that matched Noemi's description on the floor beneath Gaspar's outstretched hand, and found a shirt and boots with blood on them. Gaspar was arrested and

5

charged with burglary of a habitation with intent to commit another felony—aggravated assault with a deadly weapon.

At trial, Gaspar requested a jury instruction on the lesser-included offense of criminal trespass, but the trial court denied his request.

*There Is Legally Sufficient Evidence to Support the Verdict*

Gaspar was charged with burglary of a habitation with intent to commit a felony. The indictment, which tracks the applicable statutory language, alleges that Gaspar

> did then and there intentionally or knowingly enter a habitation, without the effective consent of Noemi Isabel Jiminez, the owner thereof, and attempted to commit or committed the felony offense of Aggravated Assault with a Deadly Weapon.
>
> And it is further presented that the defendant used or exhibited a deadly weapon, to-wit: a screwdriver, during the commission of or immediate flight from said offense.

*See* TEX. PENAL CODE ANN. § 30.02(a) (Vernon 2003). On appeal, Gaspar argues that the evidence supporting his conviction is legally insufficient because the State failed to establish that Gaspar entered the Jiminez home without the effective consent of the owner. We disagree.

In reviewing the evidence for sufficiency, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). Based on the *Brooks* plurality's description of the new application of legal sufficiency review under *Jackson* as "rigorous" and its statement that the use by reviewing courts

6

of the factual sufficiency standard in tandem with the legal sufficiency standard may have "skewed" the proper application of the *Jackson* standard, it appears that the high court is attempting to refocus the application of the legal sufficiency standard from the quantity to the quality of the evidence presented. *See Brooks*, 2010 WL 3894613, at \*\*16–17 (Cochran, J., concurring).

The uncontroverted evidence establishes that Gaspar left Perez's house, where he had been staying, and shortly after midnight, entered onto the Jiminez property, entered the large trailer where Noemi, Guzman, Israel, and their family were staying, and assaulted Guzman.

While Gaspar used to live with Noemi in the smaller trailer, the evidence is undisputed that he moved out a few weeks prior to the events in question. Gaspar still had some belongings on the property, and prior to this incident, he would occasionally come by the property for dinner or to have his clothes laundered. Inocente Gaspar, Gaspar's brother, testified that when Noemi and Gaspar lived together, they both had access to both trailers. However, Noemi and Israel testified that Gaspar had never lived in the large trailer, did not have keys to that trailer, and did not have permission to be anywhere on the property or in the large trailer that night.

Sergeant George Robinson and Investigator Brett Martin testified that the door jamb to the home was "busted" and that the door appeared to have been forced open. However, on cross-examination, Martin admitted that he did not know if the door had been damaged during the struggle, or whether the door had been broken down from the inside or the outside.

7

At the time of the incident, the gate was locked, as Israel locked the gate every night at about 7:00 p.m. and prohibited anyone, be they guests or family, from entering the property after that time;[10] after that time, Israel would not even answer his door. Noemi noted that the rule was so strict that at times, Israel had locked her out of the property because she had arrived too late in the evening.

Here, there is conflicting testimony regarding whether Gaspar damaged the lock and door in order to gain entry or whether they were damaged during the struggle. There is also conflicting evidence regarding the extent, if any, of Gaspar's access to the Jiminez property, as well as the status of the relationship between he and Noemi at the time of the incident. The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony, and reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000); *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). The jury may choose to believe some testimony and disbelieve other testimony. *Wyatt*, 23 S.W.3d at 30. Here, taking all the evidence into consideration, there is ample evidence to support the jury's finding that Gaspar entered the Jiminez residence without the effective consent of the owner and assaulted or attempted to assault Guzman with a screwdriver. Therefore, the evidence is legally sufficient to support the verdict, and we overrule this point of error.

_____

[10]Israel testified that it was 5:00 or 6:00 p.m.; however, Noemi testified that no one was allowed in after 7:00 p.m.

8

*There Is No Evidence that Gaspar Is Guilty of Only Criminal Trespass.*

In his final point on appeal, Gaspar contends that the trial court erred by not including a criminal trespass instruction in the jury charge because it was a lesser-included offense of burglary. A defendant is entitled to a charge on a lesser-included offense if: (1) the offense is a lesser-included offense of the alleged offense, and (2) some evidence is adduced at trial to support such an instruction. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007); *De Vaughn v. State*, 239 S.W.3d 351, 355 (Tex. App.—San Antonio 2007, pet. ref'd).

Applying the first step of the analysis, here, Gaspar was charged with burglary of a habitation with intent to commit a felony, to-wit: aggravated assault with a deadly weapon. The elements of burglary of a habitation, as charged here, are: (1) Gaspar, (2) without the effective consent of the owner, (3) intentionally and knowingly, (4) entered a habitation, and (5) committed or attempted to commit aggravated assault with a deadly weapon.[11] *See* TEX. PENAL CODE ANN. § 30.02(a)(3) (Vernon 2003). The elements of criminal trespass are that: (1) Gaspar, (2) knowingly, intentionally, or recklessly, (3) entered or remained in a habitation, (4) without the effective consent of the owner, (5) having notice that entry was forbidden.[12] *See* TEX. PENAL CODE ANN. § 30.05(a) (Vernon 2003). The Texas Court of Criminal Appeals has already held

---

[11]A person commits the offense of assault if that person intentionally or knowingly threatens another with imminent bodily injury. TEX. PENAL CODE ANN. § 22.01(a)(2) (Vernon Supp. 2010). Assault becomes aggravated assault if the person committing the assault uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon Supp. 2010).

[12]In *Salazar v. State*, 284 S.W.3d 874, 878 (Tex. Crim. App. 2009), the Texas Court of Criminal Appeals held that "a habitation inherently provides notice that entry is forbidden."

9

that the offense of criminal trespass is a lesser-included offense of burglary.  *See Day v. State*, 532 S.W.2d 302, 306 (Tex. Crim. App. 1975).

We next consider whether there was evidence adduced at trial that supported giving the instruction to the jury.  *See Hall*, 225 S.W.3d at 536.  A defendant is entitled to an instruction on a lesser-included offense if the proof for the charged offense includes the proof necessary to establish the lesser-included offense and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense.[13]  *Id*.; *Williams v. State*, 796 S.W.2d 793, 799 (Tex. App.—San Antonio 1990, no pet.).

In this case, the evidence established that Gaspar entered the Jiminez residence without the owner's consent and assaulted Guzman with a screwdriver.  In contrast, there was no evidence supporting an alternative fact scenario wherein Gaspar entered the Jiminez residence, but did not commit or attempt to commit aggravated assault with a deadly weapon.  *See, e.g., Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003) (holding there must be some evidence directly pertaining to lesser-included offense for jury to consider before an instruction warranted).  Gaspar points out that the screwdriver only had his blood and DNA on it, rather than Guzman's.  The lack

---

[13]In making this determination, we must consider all the evidence introduced at trial, whether produced by the State or Gaspar.  *Penry v. State*, 903 S.W.2d 715, 755 (Tex. Crim. App. 1995).  The credibility of the evidence and whether it conflicts with other evidence or is controverted may not be considered in determining whether an instruction on a lesser-included offense should be given.  *Id.*; *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992).  Anything more than a scintilla of evidence, even the defendant's own testimony, is sufficient to entitle a defendant to a lesser charge.  *Bignall v. State*, 887 S.W.2d 21 (Tex. Crim. App. 1994); *Hunter v. State*, 647 S.W.2d 657 (Tex. Crim. App. 1983).  If evidence from any source raises the factual possibility that the defendant is guilty of only the lesser-included offense, a charge on that offense must be included in the court's charge.  *Penry*, 903 S.W.2d at 755; *Saunders*, 840 S.W.2d at 391.

10

of Guzman's blood on the screwdriver is evidence that that particular screwdriver may not have been the same screwdriver used in the assault.   It is not evidence contradicting aggravated assault with a deadly weapon.   Accordingly, there is no evidence in the record that would permit a jury to conclude that, if guilty, Gaspar was guilty only of the lesser-included offense of criminal trespass. Therefore, Gaspar was not entitled to an instruction on criminal trespass.   We overrule this point of error.

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted:     October 6, 2010
Date Decided:       November 5, 2010

Do Not Publish

11